Good morning, Your Honors. Theodore Boutrous representing Wal-Mart. I'd like to reserve three minutes for rebuttal. This Court should averse the District Court's order certifying the class action in this case because the District Court committed two dispositive legal errors in finding that common questions predominated over individual issues and in doing so contradicted the Supreme Court's decision in the Dukes case, the Comcast case, this Court's decision in the Nolavi Countrywide and in the Wells Fargo case. In the Dukes case, the Supreme Court established a strict standard for determining commonality under Rule 23a of the Federal Rules of Civil Procedure. Last year in the Comcast case, the Court found that the predominant standard under Rule 23b-3 is even more demanding than the commonality standard. As Justice Ginsburg noted in the Amchem case, the predominant standard is a vital prescription for ensuring fairness and efficiency in class actions. The first error that the District Court made on the predominance issue was relying on this Court's decision in Halal v. Marcos. As this Court will recall, in the Dukes decision on Bach, the on Bach majority relied heavily on the Halal case for the statistical sampling method that the Halal case had endorsed. In the Supreme Court, the Dukes Court rejected that approach unanimously, called it a novel project, trial by formula, that could not be used to override individual issues that would otherwise arise. I don't see related sampling here. It looks like they relied almost exclusively on the declarations of the employees because your stuff was precluded. The District Court, on page 13 of the excerpts of record, in addressing Wal-Mart's argument that the penalty issue was individualized and that the determination of whether an employee was aggrieved and whether the penalties for each employee were unjust, oppressive, unfair, under the statute's language, the Court addressed that by saying statistical sampling under Halal might be a way to deal with that. It's a little bit different here, though, when you have a statutory penalty than what they were talking about at the U.S. Supreme Court level. And I understand the argument that you're making there, but I do think it's a little bit different because you're under PAGA here. But here's what ‑‑ here, I'm just going to sort of give you my holistic concern because you're going to be sitting down by the time probably other things come up. We've got three different cases and where different results are reached on the certification issue. You have an additional component in yours where you were not certain of your declarations were not considered in making the determination of clerk certification. So I think we could start from the premise that abusive discretion means sometimes things can look pretty similar and different judges can come up with different results and maybe they're not all in abusive discretion. But I've got three sitting here that I'm comparing, and I'm assuming you've probably looked at the facts in the other cases as well. So there's sort of a tendency to want to sort of understand, are these judges really, are they all applying the same standard when they're looking at anything? Because if abusive discretion is the standard, generally the way to get that reversed is that they got something wrong on the law. And so I'm struggling with the certification issue, which none of you seem to be that hip on it going to the California Supreme Court. But in your case alone, it would seem that arguably maybe with the penalties, it could be like $50 million in one year if you do all the penalties, and the state gets 75 percent of it. So I'm wondering, doesn't the state of California have a significant interest in terms of getting that 75 percent and also making sure that their employees are being properly seated or not seated? So I think the issue might be a little sexier than any of you are, it might have a little more appeal than any of you are saying. So that's one thing that's on my mind. The other is the declarations that weren't allowed in. Judge Davila, I don't know whether he was irritated with you or what the situation was, but if they had come in, apparently it was raised in a reply and it wasn't a separate motion, but then if they had come in, would it have made a difference? Well, let me address the first point first, Your Honor. That's all my ñ I'm just giving you my global thoughts, because you'll probably be sitting down when we're talking about it. I appreciate that, Your Honor. On the first point about California's interest, I think it goes to another point. California hasn't brought this claim. The Department of Labor and the Labor Commissioner, this statute, the wage order has been on the books for 40 years. It wasn't until the plaintiff's lawyers in private cases under PAGA came up with this new theory. The record ñ the opinion letters in the record show that the State of California believed that this wage order only applied to positions like typing or things where people were doing things sitting down as a traditional matter, operating machines and the like. So the State of California has never exhibited an interest in collecting massive punishments for violation of this wage order by retailers and banks and the like who have cashiers. So I don't think that militates towards sending it to the California Supreme Court. I think that the law is very clear on the penalties issues and the individualized issues, that the employee has to be aggrieved. Each employee has to be aggrieved. That's an individualized issue. And it is different than the Dukes case because we're talking about penalties, but that's all the more reason to be cautious. And it is individualized because the statute explicitly ñ excuse me ñ the wage order in PAGA, but under PAGA, the judge has to determine based on the facts and circumstances of the particular case whether the penalty to the aggrieved employee is unjust and unfair. That's individualized. So I think it's eligibility, just like in Dukes. It's highly individualized. And then the amount of the penalty is an individualized issue. And the only way the district court got around the individualized issues was to cite the Hillauer case, which was repudiated in Dukes. Well, where do we come up with this rule somehow that if it's over 50 percent of the job is being ceded, where does that come from? I don't think that's the rule, Your Honor. I think that that's something that the plaintiffs have argued and come up with these formulas. The test is stated in the statute. Does the nature of the work permit ñ reasonably permit the use of seats? And that requires an analysis of what each employee does, what their work is, what their actual activities are. What's the authority for that proposition? The language of the statute, Your Honor, and also ñ Because you equate the statute, and then you said, and that means X, Y, and Z. Where does the X, Y, and Z come from? Your Honor, probably the best source for that would be to look at this Court's decisions in the Vinole and Wells Fargo case. Since we're dealing with California law, shouldn't we see what the California Supreme Court says about that? Well, we ñ as we said in our submission, we don't object to that, Your Honor. We feel that this Court can interpret the language of the statute. We have great confidence in the Court's ability to do that. I appreciate your confidence, but we have cases, including from the Supreme Court, that says if the highest court of the state hasn't spoken on an issue, it's an unsettled issue. Even if the statute looks like we could figure it out if we put our thinking caps on it, as a matter of comedy, as a matter of respect for state courts, it's the state court decision to tell us what that language means. If the Court feels more comfortable going down that route ñ Am I missing the boat? Well, here in our case, we're arguing on the classification issue, and that's a Federal issue. We think that under just the plain meaning, going to the penalties point, that class can't be certified under this statistical model. The other thing the district court did to put aside the meaning of the statute, it's clear these are individualized issues. These are for aggrieved employees. There's no other reasonable interpretation of the statute. But if these three judges in the three cases that we have here all looked at it a little bit differently, and that's how they're coming up with their results, looking at it a little bit differently, then wouldn't clarity be helpful in terms of ñ I mean, you have to do abuse of discretion if they're not getting ñ if everyone's looking at the law a little bit differently. You have a different view of the law than do plaintiff's counsel, but it's all based on what would be best for your particular clients, and I don't have any issue with that. But that all factors into the abuse of discretion and has come up with discrepant results in three cases. Yes. Your Honor, I think ñ and I'll speak on my appeal and let everybody speak about the other cases. But here, these are legal errors. The Halal, reliance on Halal, and going to the ñ this goes to your question on the declarations and the other legal issues. In the Wells Fargo decision, the Vinola case, countrywide, the court said when a company has a policy, that doesn't ipso facto mean that there's commonality or predominance. That's what the district court held here relying on California law. So the court imported California class action law. I don't think the court got it right, but it's interpretation of California class action law into the federal class action analysis. That's pure legal error. The Shady Grove case from the Supreme Court, this Court's cases say that's improper. In the Vinola case, this Court said that the job descriptions and the policy is the first step. Then you have to look and see what the employees actually did. That is a federal question in terms of how you look at predominance and commonality. Well, but in this particular situation, it seems to me based on what the court looked at, they found that Walmart had a policy of not providing the seats, that all the cashiers spent the majority of their time working at the cash registers, that all the cashiers shared the same duty regardless of the shift, that they had the same kind of cash register configuration whether or regardless of store location. So why does that not satisfy? For several reasons. First, the court relied on the job descriptions, which I urge the court to look at them. They start at page 65 of the excerpts of record, and it lists a whole array of responsibilities and functions that a cashier should be ready to perform, number one. So it's just the general job descriptions. Just like in Wells Fargo and Vinola where there were job descriptions, then the question is what do the employees actually do? And the record evidence here, putting aside the declarations, if one looks at the plaintiff's own testimony, they testified that depending which cashier lane they were in, depending on the type of tasks that they would have to be mobile and standing. So the question, Your Honor, is what does a particular cashier, which collection of duties do they do, and is it reasonable for them to have a seat or to do it standing? That goes to real life. What is happening? The court here relied on this abstract notion of, and the testimony from the 30B6 opponents was on this too, what is the general view of what a cashier should do and be ready to do? That's much different from what they actually do and what they could do with a seat. Well, I think what Judge Smith is asking, and this also goes to the admissibility of the declarations, is I think my understanding in these certification hearings, you chose to do it by declarations, but the district judge can make certain factual findings. And here there were certain factual findings that were made against you. Now, whether they considered that or not, and he, aren't you asking, okay, aren't we stuck with those factual findings that the district court seemed to believe what the head honchos were saying, what the nature of the job was. They're saying you're defying the job. This is the nature of the job. Now, you can't then later back away from that. Two things, Your Honor. First, the court made that conclusion based on the job descriptions, but not on any evidence about the actual work being performed. That was legal error. So you're not stuck with that finding. Second, the declaration should not have been stricken as a sanction. As we lay out, when you're sanctioning someone for not producing, disclosing information, there's supposed to be a notice motion. That was not done here. It was in a reply brief. Well, but just a minute. You should have disclosed those witnesses to Williamson beforehand, shouldn't you? Well, under Rule 26, the initial disclosures go to disclosures of claims and defenses. But even if they should have disclosed it earlier, they had two weeks to respond to the class certification motion. And the court could have come up with a less drastic sanction. Well, my problem with this is when you get to this, whether we're excluding the evidence was wrong or right, it isn't what I think. This is an abuse of discretion standard. And in this particular situation, Williamson's motion to exclude the witnesses should have been disclosed to Williamson beforehand under 26A and 26E. And I guess I'm trying to figure out why, on an abuse of discretion standard, that this is substantially not substantially justified, given what should have been happening. No, it was a legal error to strike and sanction a company without a notice motion and a full-blown hearing and analysis and a determination of whether lesser sanctions would have sufficed. So it shouldn't be abuse of discretion. All right. Correct, Your Honor. And so then you've got all these CAFA deadlines. So is that part of the problem here? I don't think so, Your Honor. I think the company followed the deadlines and followed the procedures. But even if those declarations are kept out of the picture, individualized issues engulf common issues because of the individualized issues on penalties. And I'd like to reserve my remaining minute for rebuttal. Thank you. Thank you. Thank you. Your Honor, Michael Rubin, Alchula-Berzon for the plaintiffs. I'd like to respond to Judge Callahan's questions. After first pointing out ---- I'm sorry. I'm just ---- because we've got all of you here and I know that they're all going to bleed over, so I'm just trying to put out my global concerns. There are important concerns that we'll have to address in each of the cases for separate reasons. First, as to the abuse of discretion standard, it's actually more difficult for Walmart to overcome in this case because, as the panel in the Abdullah case recently held, when there is a grant of class certification, there's even more discretion given to the findings of the district judge. That's the law of the Ninth Circuit. To Judge Callahan's questions, first of all, the extent of the state's interest and Mr. Boutros' response that there have not been prosecutions, the state has not been seeking millions of dollars in these cases. Well, the obvious reason is because until PAGA was announced, the state had no authority to seek penalties. Although this has been a provision of the wage order since 1919, the state's only power was to seek conjunctive relief in instances where people did not provide reasonable sitting, not to seek any of these penalties at all. In fact, there were enforcement actions, and that's shown in the record by the 1976 statement of findings where the IWC, in amending the wage order in 1976, made clear that, in fact, there had been a long series of enforcement actions, and there was also attached in the record, and this is in the CVS case, a whole series of opinion letters in which the IWC and then the DLSC, in fact, interpreted it and gave advice to various businesses who asked whether seating would be provided. So this does have a long history of enforcement. Is there a serious question as to the ultimate merit standard? Absolutely. Should this case be certified to the California Supreme Court? Not the Walmart case. We can discuss separately the CVS case and the Chase case, but there's no question about whether the judge in this case applied the correct or incorrect standard. He will have the opportunity at trial, in this case as a class action, to determine how to apply the reasonably permit standard, an objective standard. I guess I anticipated that that would be your response. I guess I'm trying to figure out, when he gets to this particular situation, it seems to me he's going to be in the same spot that these other two cases are in. We're not quite in the same spot in this case where we're interpreting the statute itself. We're just determining whether we're going to have a class before we get to the interpretation of the statute. But nonetheless, the poor district judge is going to be in the same spot. He's going to have these same questions. If you're going to suggest that the last two cases are better able for certification than this isn't, why not send them all three so he has that information before he begins? Because that information, one, has nothing to do with a class certificate, with your review of the class certification here. Two, by the time this case gets to trial, there may be an adjudication. As the parties pointed out, there are two of these cases currently pending in the California Court of Appeal. And three, we don't know precisely what issues of interpretation will arise in the facts of this case. All we know is that there are four Rule 20b-6 declarants. And in response to counsel, I would like to draw your attention to the specific notice of deposition. It didn't ask, as a general matter, what do the job descriptions provide. It asked specifically, and this is the beginning of the second volume of the supplemental excerpts of record, it asked specifically what the cashiers did. It went in great detail, and the judge concluded, based on that and based on the testimony of the plaintiffs, that he did consider that regardless of the location or the configuration of the cash registers or the checkout lanes, the job duties were the same, Walmart's expectations about the type of work were the same, the physical activities they performed were the same, and the essential functions were the same. So whatever the standard turns out to be, and we've advocated for what we believe is the correct standard for the reasons set forth, it should be adjudicated once. The court can look at the range of facts to the extent there is a range of facts that are material. And our position, obviously, is most of the differences that have been articulated by Walmart point to facts that are not material. But the judge can determine whether these jobs reasonably permit the use of seats. And in this case, unlike the others, Walmart conducted a statistically valid survey. It hired an outside company to go through all of the various job functions, and that's in this record as well, and portions of that survey are in this record, and decided that these particular front-end cashiers would be on a job code of their own, 30548. That job code is limited to people who work at these particular registers, not the other registers that are referred to in some of Walmart's declarations. Well, but, you know, I guess we're, the confusion is sort of coming out since we've got all three cases. I think in one of the cases the position was if you can do certain of the tasks where you should sit down, then you should be able to have a seat then. And that, I don't know that that can be the standard. You know, so we have in all of these, these things creeping through. Like, for example, I mean, why shouldn't the court be able to look at a full range of a cashier's activities in determining whether the nature of the work reasonably allows the use of seats? So if a cashier is spending a lot of time away from the register, even if it's less than 50 percent of the time, isn't that relevant? So it's, you both have these definitions of what we're supposed to look at, but I'm not really sure what the common question is. Is the common question or the common policy of not providing seats, or is the common issue really relevant to the question of the nature of the work reasonably allows the use of seats? There's all of those things in all of these that are, everyone's doing a little bit differently. That's right. In an appeal from a grant of class certification, the question is whether that ultimate question that you're focusing on is one that can be adjudicated on a class-wide basis. And Judge Davila concluded that it could be. Now, I can certainly address, although it hasn't been the focus of briefing in this case, why the correct standard is under the reason we permit to focus on discrete sets of tasks. And we pointed out we had a whole range of hypotheticals. The receptionist who sometimes had to go and get coffee. Most jobs are mixed-task jobs. Well, I guess what I'm just telling you, since I have all three cases, I'm finding flaws in all of your arguments. And so that's, and wanting, you know, being the bright-line person that I am, when I get to abuse of discretion, I recognize that I could have two similar cases and still affirm both on abuse of discretion, even though they reach different results. But since we have no bright line here, that's getting. All right. Then let me give you a bright line. In the other two cases, as plaintiffs will point out, there was a legal error in the way the merit standard was construed. We'll address that in those cases. In this case, there has been no argument that Judge Davila stated the wrong legal standard. The legal challenges that have been raised have to do with the halal issue, which is an ultimate calculation of penalties under PAGA issue, which is not a legal error that goes to the class certification issue. PAGA is a fixed $100 per initial violation, $200 for subsequent violations. There is no range of penalties, individual by individual. The distinction between action and case that Wal-Mart points out makes no sense, because this isn't an EJIA case. When they say that ---- Well, I agree with you that PAGA is different than what they were talking about in the Supreme Court case. But I don't have any authority for how it's different exactly. But it's ---- So I guess the question, and this is the, Your Honors will have to decide this for yourselves. If there is one of these cases that can be decided entirely on its own, it affects a company, it affects thousands of that company's cashiers, and ultimately that case won't be resolved for quite a while until even if class certification is affirmed, is there a reason to hold up that case to try to get a determination on a merits issue that isn't going to affect this Court's adjudication of that threshold issue? I would say that the Court, whatever it decides to do in the other cases, can pull this case out under the abuse of discretion standard, because ultimately the Court will apply the correct legal standard, whether it's adjudicated by the California Supreme Court, whether the California Supreme Court grants review. And there are reasons we pointed out in our supplemental brief why it's not likely in this case that the Supreme Court would grant review. I mean, in this case or these cases, in this particular case? In this particular case, because of the procedural posture in which it rises, and as a general matter as well. Let me ask you this. Go ahead. This case deals less with the interpretation of the statute than it does with the class certification problems, as you've pointed out. Where does commonality and an individual variation, individual variations begin? I'm having a hard time figuring out how much commonality is commonality. I guess in almost any circumstance you can distinguish, you can find some variations from store to store, people to people. And, you know, if you take that to its logical conclusion, nothing would be certified because everything is, you know, a variation. That's correct. How much commonality does there have to be? Where do you draw that line? I think the way Rule 23 is written is it bleeds into the predominance test. If you have a common issue, one or more common issues, where a single answer will resolve the question that satisfies commonality. Having a common title isn't enough, right? No, nor is having a common policy of denying seats enough. And in this case, the judge made clear it was more than that. After looking at what the Rule 36 deponents stated, he concluded that the circumstances of each worker were sufficiently similar and the stations were sufficiently similarly configured so that it would all be resolved, that the differences would be immaterial. And when you get to the predominance inquiry, that the amount of time that would have to be spent resolving the individual differences were minimal compared to the judicial savings that would be accomplished by resolving this case on a class action basis. So that identifies some variations. That's not the end of the ballgame for you. Oh, no. Oh, no. It's a balancing test. Predominance is just a function of judicial efficiency. If there are common issues that can be resolved through class-wide evidence, then predominance just asks, does it make more sense to resolve this in a single case rather than a group of cases? The instances, like Vannulli and like Navora, where the court concluded that predominance wasn't satisfied is because you had just a threshold issue of a challenge to misclassification, but to actually make the determination on the merits, you have to go through every individual's workday to determine what time was spent in the office, out of the office, and so on, in the misclassification cases. There is no such inquiry here because it isn't broken down on that basis under any of the standards, and certainly Judge Davila didn't find that it had to be broken down in that standard, so there would be no need for that type of individual determination. It seems to me that the counsel suggests that it's the assessment of the penalty that's the problem that we have here. Why is that amenable to a class-wide resolution? It's arithmetic. It's number of employees times pay period times the initial or the subsequent $100 or $200. Leyva, this Court's recent case, Leyva v. Medline, makes clear that even if there were more complicated calculations that had to be undertaken to evaluate damages, that wouldn't be sufficient to defeat class certification. But this is just plug-in formula. There is no gradation. That's the maximum. The judge has the authority to adjust that down to a dozen, he or she. Yes. In the case as a whole, and we cited the Sintas case and other cases where when it's done, it has never been done on an individual basis. The language doesn't support it being done on an individual basis. In every case in which it has happened or in which a court has concluded not to do it, the evaluation has been as the case as a whole. And the reason the California legislature used the word case rather than action in response to an argument that Wal-Mart made in its briefs was because if they used the word action, then the court deciding penalty would have to look at whether the action, meaning the lawsuit, was somehow improper, whether it was not substantially justified or whether, in other words, class, sorry, the way it's written focuses on the underlying circumstances of the case. If you use the word action, you would focus on the circumstances of the litigation. It's not how someone litigates a case that determines whether to reduce penalties. It's whether the circumstances of the case itself are arbitrary, confiscatory, or oppressive, and that's done on the case as a whole basis. So there's nothing individualized under those circumstances. Well, since basically my understanding of these cases, basically the certification issue is that they're won or lost on that issue, that most of these don't go to trial after. But that being said, if Wal-Mart's declarations had been considered, would that have made a difference here? No, and that was your second question that I was going to get to. Okay. Several reasons. The principal reason is that much of what is contained in those declarations is also contained to some extent in the plaintiff's own deposition testimony, which the court did consider. So the declarations would have been cumulative. And I'll point to Wal-Mart's brief at page 7, 26 to 28, and its reply brief at 7. It keeps harking back to plaintiff's testimony. So cumulative wouldn't have made a difference. Secondly, Judge Davila said it actually contradicted the ‑‑ so he looked at it, because otherwise he wouldn't have been able to conclude that it contradicted the Rule 30b-6. And as a result, he was certainly authorized to give more credence and weight to what the officially designated spokespeople for Wal-Mart responding to the specifically detailed questions in the deposition notice testified, rather than what several individuals testified. And finally, if you look at what those declarations say, many of them talk about cashier positions that are not under Job Code 305‑48. Many of them talk about the ultimate merits issues. They say, I would not have wanted a seat. A seat would not have worked for me. That's not a class certification issue. That's an ultimate merits issue, and that part of the declarations would have been stricken. There's very little left in those declarations that actually pertains to the class certification issue as to whether there's somebody situated. I see you're out of time, Mr. Dixon. I have one more. I have one more question, too. It was my idea, or I thought, that the district court adopted the holistic interpretation of the wage order when it certified the class. I understood that the plaintiffs argued for a different interpretation, and probably the competing interpretation might be more favorable to the plaintiffs. So if we were to affirm the district court, it seems to me that even this holistic interpretation would not change this recommendation we would make, would it? This recommendation you mean to affirm? Right. Well, I'm not sure what Your Honor is pointing to in Judge Davis's opinion. There's no reference to holistic. There's no reference to counting. There is weighting of tasks. He's focusing on the most essential. I don't read it, and there's certainly nothing explicit in the opinion that suggests that he was reading it as Judge Anello and Judge Gutierrez did. And I would say that it's at worst, from our perspective, an open question, but I don't think that's a correct reading of what he did. All right. I was just trying to see where you were going with that. I have one question. Mr. Rubin, it's my understanding, I'm not asking you to make a Sophie's Choice amidst your clients, but it's my understanding that you're saying that this case is easier, so if you're going to certify, don't certify this case and affirm on this case, and then if there were issues to be certified on, do it on the other cases? Am I mis- You know, it's not that it's easier. It's that it raises different issues. I don't think it's necessary, for the reasons that Judge Smith and I just discussed, for this court to determine in this case on this record, given this standard of review, what the proper ultimate standard is. So this can be resolved by others. This is a federal civil procedure question. The other cases pose substantive California law questions. Wouldn't that be a fair way to put it? I think so, yes. Thank you, Your Honor. Thank you. Mr. Boutrous, back to you. Your Honor, I want to go right back to this penalty issue, because the statute says the penalties can be awarded to an engraved employee, $100 per engraved employee. We're talking about, this isn't about seats. This is about money. The plaintiffs haven't even asked for an injunction. They want to subject the company to the threat of hundreds of millions of dollars of fines, penalties, punishments. The due process clause, whatever California law says, the due process clause, the Supreme Court's decisions in State Farm, BMW, Philip Morris, say that you have to look at the injury to the plaintiff and make sure the punishment is proportionate to that injury. They're asking the court to endorse a system that would be done totally on statistics, or that the damages issues would be punted. They say the damages issues, the penalty issues, shouldn't be considered at this point. That's directly contrary to Comcast. And that's what the district court also held alternatively at page 13. Those issues have to be addressed now. They can't, these issues cannot be done on a classified basis. It would violate due process. It would violate Dukes. It would violate Comcast. And I'll end with this Court's decision in the hotel charges case in 1974, which predicted all of these rules, says you have to look at whether the damages can be calculated in a fair and efficient way that accounts for individualized differences. They can't be. And we're talking about punishments. That's the difference. It's worse to calculate punishments on an aggregated basis and mow over the individualized issues. Well, let me just ask you quickly. If the bus is going to the California Supreme Court, should you be on the bus or should you get thrown under the bus? We should be firmly on that bus, Your Honor, if the Court certifies it, because I think the Court could decertify the class without sending us there. But to the extent the elements are what's holding the Court back from reversing class certification, the Supreme Court, this Court has said that you have to look at the elements in determining whether those issues can be tried on a class-wide basis in a fair manner. So we want on the bus if that's where it's going. Otherwise, the Court should reverse the class certification order. Thank you very much. Thank you very much. That case is submitted.
judges: Silverman, Callahan, Smith